JUDGE FRANK MONTALVO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER, | § § § § |
| Plaintiff, | § § |
| v. | § § § |
| AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS a Florida Corporation, and SOPHIA AHMED | § § § § § § |
| Defendants. | § § |

EP22CV0018

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant AMERICAN AMICABLE LIFE INSURANCE COMPANY OF TEXAS ("Amicable") is a corporation organized and existing under the laws of Florida with a principal address of 425 Austin Avenue, Waco, Texas 76702 and can be served via registered agent Chief Financial Officer, 200 E. Gaines Street, Tallahassee, Florida 32399.

3. Defendant SOPHIA AHMED ("Ahmed") is a natural person, resident of Texas, insurance agent of American-Amicable Life Insurance Company of Texas and can be served at 104 Magnolia Park Trail, Sanford, Florida, 32773.

### JURISDICTION AND VENUE

4. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's

1

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

5. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

6. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

7. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

21. Plaintiff has been on the Do-Not-Call Registry since December 2007.

22. The Plaintiff has received at least 19 calls within 60 days to his cell phones ending in 4604 without his prior express written consent and not related to an emergency purpose, soliciting "Senior Benefits" products on behalf of Defendant Amicable.

23. Plaintiff received multiple calls from a variety of spoofed caller ID's that contained a prerecorded message from "Kate from Senior Benefits."

24. Plaintiff logged these calls as they continued to bombard Plaintiff with unwanted calls.

25. On December 17, 2021, Plaintiff received a phone call showing 915-356-7793 on the caller ID. Plaintiff answered the phone and a prerecorded voice message began playing. The prerecorded message began with "Hi, this is Kate from Senior Benefits." Plaintiff pressed "one" and was connected to telemarketer who asked Plaintiff qualifying questions. The telemarketer asked Plaintiff his name, age, state of residence, and health questions in order to qualify Plaintiff for the services. The telemarketer did not identify themselves, the compony

the telemarketer worked for, or the company on whose behalf the telemarketer was calling.

26. The telemarketer then transferred Plaintiff to Defendant Ahmed who sold Plaintiff a life insurance policy.

27. On December 28, 2021, Plaintiff received life insurance policy number 0103531760 from Defendant American-Amicable Life Insurance Company of Texas.

28. Table below displays calls made to plaintiff by defendants:

| Date | Time | Caller ID |
| --- | --- | --- |
| 11/5/2021 | 10:38 AM | 254-322-6741 |
| 11/11/2021 | 8:24 AM | 915-316-5830 |
| 12/2/2021 | 2:58 PM | 915-369-6096 |
| 12/7/2021 | 10:34 AM | 915-356-0637 |
| 12/8/2021 | 2:30 PM | 915-311-5373 |
| 12/8/2021 | 5:20 PM | 915-381-3428 |
| 12/10/2021 | 1:06 PM | 915-317-1616 |
| 12/13/2021 | 10:08 AM | 915-398-6650 |
| 12/14/2021 | 11:12 AM | 915-322-3433 |
| 12/17/2021 | 8:10 AM | 915-342-8307 |
| 12/17/2021 | 3:39 PM | 915-356-7793 |
| 12/21/2021 | 8:10 AM | 915-251-3129 |
| 12/21/2021 | 5:02 PM | 915-384-5051 |
| 12/22/2021 | 2:04 PM | 915-390-0404 |
| 12/22/2021 | 4:29 PM | 915-316-2385 |
| 12/22/2021 | 5:31 PM | 915-373-6151 |
| 12/23/2021 | 4:43 PM | 915-313-9902 |
| 12/27/2021 | 10:51 AM | 915-331-1157 |
| 12/29/2021 | 11:47 AM | 915-335-8543 |

29.

30. Plaintiff received the first phone call from Defendants on November 5, 2021. Plaintiff answered the phone and heard the "Kate from Senior Benefits" recording playing. Upon being connected to a representative Plaintiff was asked qualifying questions about his age and health. Plaintiff informed the Defendants telemarketing representative that he was 47 and the telemarketer hung the phone up on Plaintiff.

6

31. On the November 11, 2021, phone call Plaintiff answered the phone and again heard the "Kate from Senior Benefits" prerecorded message playing. Plaintiff was again asked his age. Plaintiff again told the representative he was not old enough to purchase the insurance. Upon hearing this Plaintiff told the representative to "Please stop calling. I am not old enough for the insurance. Don't call me back."

32. The phone calls continued, and Plaintiff finally told the Defendants representative he was 50 years old in order to qualify for an insurance policy in order to find out who was behind the calls.

33. Each and every call was initiated using a spoofed caller ID, and each and every telemarketer the Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of.

34. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

35. Defendants Amicable and Ahmed directly participated in the phone calls by providing the anonymous telemarketers with instructions on what states to call, the minimum age of the consumer, the health status of the consumer and instructions on gathering payment information.

36. Defendants Amicable and Ahmed knowingly and actively hired offshore anonymous telemarketers to make robocalls with prerecorded voice messages on their behalf.

37. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on

7

behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

38. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

39. No emergency necessitated the calls.

40. Defendant never sent Mr. Callier any do-not-call policy.

41. On information and belief, the Defendant did not have a written do-not-call policy while it was sending Mr. Callier the unsolicited calls.

42. On information and belief, the Defendant did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## VICARIOUS LIABILITY OF THE SELLERS

43. Defendant Amicable is vicariously liable under the theories of actual authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

44. Defendant Amicable is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain the Plaintiff as a client and sold the Plaintiff a life insurance policy.

45. The policy shows that the beneficial party who was gaining customers was Defendant Amicable.

46. Defendant Amicable authorized an anonymous third-party telemarketer to generate prospective customers. Defendant Amicable hired a third-party to promote its products and services. Defendant's integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that the third-party telemarketer was the

telemarketing department of Defendant Amicable.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

47. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

48. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

49. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

50. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

51. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

52. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, more frequent cell phone charging and reduced enjoyment of Plaintiff's cell phone.

### The Plaintiff's cell phones are residential numbers

53. The calls were to the Plaintiff's cellular phones (915) 383-4604 and (915) 245-4374 which are the Plaintiff's personal cell phones that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15

9

years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phones for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phones registered in his personal name, pays the cell phones from his personal accounts, and the phones are not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

54. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

55. The calls by the Defendant violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### I.   FIRST CLAIM FOR RELIEF
### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone numbers without his prior express written consent.

3.     Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.     Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.     Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1.     Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

     a.     a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

     b.     training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

11

      c.    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

3.    Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.    Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5.    Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

1.    Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.    The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone numbers without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

---

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

4. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 19 calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Mr. Callier of damages, as allowed by law under the TCPA;

H. An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

I.       Such further relief as the Court deems necessary, just, and proper.

January 6, 2022,                      Respectfully submitted,

*/s/ Brandon Callier*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com